June, 1805.

Cowles
v.
Wilcox.

Elijah Cowles, Jonathan Cowles, Seth Cowles, Gad Cowles and Martin Cowles *against* Robert Wilcox.

*In an action against the endorsor of a promissory note, the maker, for whose accommodation the defendant endorsed the note, and who had executed a mortgage deed to the defendant as security, was held to be an inadmissible witness for the defendant to support a defence of usury, being interested in the event of the suit.*

*Quære, whether a person, who has no interest in the event of the suit, can be admitted as a witness to impeach a security, which he has given.*

MOTION for a new trial.

This was an action of *assumpsit* against the defendant, as endorsor of a promissory note.

The defendant pleaded *non assumpsit;* and gave notice, according to the rule, that he should give *usury* in evidence.

On the trial, the defendant stated, that before the making of the note, *Isaiah Tuttle* applied to the plaintiffs for forbearance and day of payment of certain executions in their favour against him, which were then in the hands of an officer for collection: that the plaintiffs thereupon agreed with him, that if he would make a note of the tenor of that described in the declaration, payable to the defendant, and procure his endorsement thereon, they would receive it, by the hand of some third person, at the rate of seventeen shillings in the pound, and apply the same in satisfaction of the executions : that *Tuttle*, in pursuance of this agreement, made the note described in the declaration, and procured the defendant to endorse it, for the purpose of being delivered over to the plaintiffs; immediately after which, it was accordingly, with the knowledge and consent of the defendant, delivered over to the plaintiffs, by the hand of *Russell Munson;* who thereupon received an order from them, in favour of *Tuttle,* for the sum so agreed to be allowed for the note, *viz.* for seventeen shillings in the pound to be applied and endorsed on their executions against him. The defendant then offered *Tuttle* as a witness to prove these facts. But, it appearing that he had executed to the defendant a mortgage deed of certain land, defeasible on his paying to the defendant the contents

of said note, the court decided that he was not a competent witness for that purpose, and rejected his testimony. The plaintiffs obtained a verdict; and the defendant moved for a new trial.

*Gould*, in support of the motion.

If *Tuttle* was incompetent, he was so, either because he was interested in the event of the suit; or, from principles of policy.

1. *Wilcox* was in the nature of a surety, with a mortgage as counter security, from the principal. *Tuttle* was not interested in the event, first, with respect to his land mortgaged; nor, secondly, as to his liability to reimburse *Wilcox*.

First, as to the mortgage. If judgment should be for *Wilcox*, *that* would not discharge the mortgage, nor enable *Tuttle* to avoid it. The mortgage was good, or void, *ab initio*, and independently of the event of this action. If *Tuttle* can aver the usury as against *Wilcox*, it is bad, though *Wilcox* should be subjected. If not, it is good, though *Wilcox* should not be subjected. No averment that he has been, or has not been, subjected, can be admitted to affect the mortgage. *Mease* v. *Mease*, *Cowp*. 47.

But, it will be asked, if *Wilcox* never pays, shall he hold the land? Why not? If he holds, it must be on the ground that *he* is not affected by the usury. Then this case will be like any other, where the grantor has *estopped* himself by his deed. At any rate, *Wilcox* can hold as well without paying as with. If the mortgage is infected with usury, he cannot hold in any event; if not, an averment contradicting the condition is not admissible.

Secondly, as to *Tuttle's* liability to reimburse *Wilcox*. Suppose a judgment in this action against *Wilcox*, *that* will not subject *Tuttle* further than he would otherwise be. It will be contended, that if *Wilcox* is compelled to pay, he may maintain *indebitatus assumpsit* for money

paid, &c. against *Tuttle*, or an action on the *note*. If so, then payment by *Tuttle* to *Wilcox* will discharge the land. For aught that appears, he would gain as much in this way as he would lose by a recovery against him; and thus his interest would be *balanced*.

But no action would lie against *Tuttle*. *Wilcox* knew of the usury. It was through his agency that the corrupt and illegal transaction was effected. If the surety was privy to the usury, he cannot recover against the principal. *Patkins' case*, 3 *Leon*. 63. *Bac. Abr*. tit. *Usury, H. Com. Dig*. tit. *Usury, E. Ord on Usury*, 101. In *Collins* v. *Blantern*, 2 *Wils*. 341. a bond executed as an indemnity to a third person, who had given his note to stifle a prosecution for perjury against the defendants was held void; and this has since been regarded as a leading case. *Mitchell* v. *Cockburn*, 2 *H. Bla*. 379. was decided upon the same principle. Further, a surety having taken a bond of indemnity, cannot maintain *indebitatus assumpsit* on paying the debt. *Touissaint* v. *Martinant*, 2 *Term Rep.* 100. His remedy is on the bond. *Wilcox* has taken his security.

2. The principle of policy relied upon to exclude the witness, is, that no man shall be allowed to impeach his own security. Here it is necessary to remark only, that the rule, as introduced in *England*, by the case of *Walton* v. *Shelley*, 1 *Term Rep.* 296. is limited, in its application, to *negotiable* instruments; and that that decision has since been overruled by the case of *Jordaine* v. *Lashbrooke*, 7 *Term Rep.* 601. In this state it has never been directly recognised. In *Allen* v. *Holkins*, 1 *Day*, 17. the witness was offered to contradict the terms of his own deed. The court very properly decided that he was *estopped;* and decided nothing more. The remarks upon the rule in *Walton* v. *Shelley* were extrajudicial. Further, the object of the rule in *Walton* v. *Shelley* was to protect only such holders of negotiable paper, as had received it, without knowledge of the usury. But in

this case, the evidence, offered went to prove that the plaintiffs were *privy* to the corrupt agreement.

*Benedict*, contra.

1. *Tuttle* was an incompetent witness, because he was interested in the event of the suit. *Wilcox* endorsed the note for *Tuttle*, at his request, and for his benefit. If he is obliged to pay the money to the plaintiffs, he will have a clear remedy against *Tuttle*, for so much money paid for his use. This cannot be controverted, unless by saying either that as the defendant had taken a deed of mortgage to secure him for becoming an endorsor, he can, at all events, hold the land, because the consideration on which it was given cannot be averred by *Tuttle ;* or that because *Wilcox* knew of the contract between the plaintiffs and *Tuttle*, his deed is void, and he has, therefore, no remedy against him.

The fact being admitted, the situation of the witness is not varied by any supposed difficulty in his availing himself of it ; nor is it certain, from any thing appearing on the motion, but that the real and true nature of the transaction might be proved by proper testimony. But if no averment can be received regarding the mortgage, and if *Wilcox* can, at all events, hold the land, then it follows, that as the note was endorsed by *Wilcox* for *Tuttle*, at his request, *Wilcox*, upon paying the money, can have his action against *Tuttle* just as though no security had been taken. If *Tuttle* cannot be received to prove the facts for the purpose of compelling a reconveyance, having saved *Wilcox* harmless, neither can he when sued by him in an action for money paid for his use.

He can sustain this action, though he *knew* for what purpose the note was negotiated. It was not endorsed for the purpose of carrying into effect any corrupt agreement between *Wilcox* and *Tuttle*. *Wilcox* was not to take benefit of it in any manner whatever.

It was a mere accommodation note to enable *Tuttle* to raise money for his own use only. As between these parties, every thing was perfectly fair. In the case of *Button* v. *Downham*, *Cro. Eliz.* 643, it was holden, that an action on a bond to indemnify and save harmless the plaintiff from a usurious bond, in which the plaintiff had united with the defendant as his surety, would lie, notwithstanding he knew of the usury: And although *Patkins*' case, cited on the other side, seems to oppose this decision, the reason given in that case does not apply to this, because if *Wilcox* recovers in a suit hereafter to be brought, it will be on the ground that he could not resist the claim of the plaintiffs; whereas in that case, he had a good defence, and ought to have made it. But if it is admitted, that the counter security is not usurious as between the parties, it by no means follows, that it should be cut down, lest the contract, which is really so, should, by means of the surety refusing to oppose it, be carried into effect contrary to the intention of the statute. The cases cited from *Bac. Abr.* tit. *Usury*, *H.* do not support the positions for which they are adduced.

2. *Tuttle* is inadmissible from principles of policy. Having given the note in question, and procured it to be negotiated to the plaintiffs, he is incompetent to testify to any facts tending to impeach it. *Walton* v. *Shelley*, 1 *Term Rep.* 296. *Allen* v. *Holkins*, 1 *Day*, 17. *Hart* v. *M'Intosh*, 1 *Esp.* 298. *Coleman* v. *Wise et al.* 2 *Johns.* 165. *Parker* v. *Lovejoy*, 3 *Mass. Rep.* 565.

It is indeed said, that the rule in *Walton* v. *Shelley* extends only to negotiable instruments. Our notes of hand, it is true, are not negotiable so as to enable the endorsee to commence a suit in his own name against the maker, but for every other purpose they are so. After being negotiated, they are not subject to process by foreign attachment; the endorsee may sue the endorsor upon his endorsement; an action at law may be sus-

tained for giving or accepting a discharge after a trans- June, 1809.
fer; and it has in one case been held, that the endorsee
might sue in his own name under special circumstances.
*Hoyt* v. *Maltby*, *superior court*, 1802; and, at any rate,
the reason of the rule extends to our notes when nego-
tiated, as much as to any paper.

COWLES
v.
WILCOX.

But it is said that the witness was offered to prove
that the plaintiffs knew of the usury. This presupposes
the evidence given, and may be said in every case.
Besides, in the case of *Hart* v. *M'Intosh*, the witness
was offered to prove that the plaintiff had knowledge of
the illegal transaction, but was rejected.

BY THE COURT. The question in this case is, whether
*Tuttle*, offered as a witness, was interested in the event
of the suit?

Notwithstanding the expression contained in the con-
dition of the mortgage deed from *Tuttle* to *Wilcox*,
which is, that the same shall be defeasible on *Tuttle's*
paying to *Wilcox* the contents of the note according to
the tenor thereof; yet the intention of the parties is
manifest. The object of the mortgage was indemnity
to *Wilcox*. Not only payment of the note by *Tuttle*
would defeat the mortgage, but should that note be,
avoided by any other means, so that *Wilcox* would be
saved harmless from it, the result would be, that if the
estate had vested in *Wilcox* by virtue of the mortgage,
a court of chancery would decree a redemption of it.

On the other hand, should *Wilcox* be subjected on his
warranty, he would either be entitled to the benefit of
the mortgage for his indemnity, or he would have his
action of *indebitatus assumpsit* against *Tuttle* for money
paid to his use and benefit.

The witness offered was, therefore, interested in the
event of the suit.

New trial not to be granted.