# Horace H. Goodman *versus* James Eastman and James Harford.

A and B made a note for $20, payable to H, which note B took for the purpose of passing it to the payee ; but before he delivered it, B, without the knowledge or consent of A, altered it to $120, and then passed it to H, for that sum—it was held that A was not liable to pay the note.

The rule of law, that where one of two innocent parties must suffer by the fraud of a third person, he who trusted such third person, and enabled him to commit the fraud, must abide the consequences, does not apply in such a case.

Assumpsit upon a note signed by the defendants for $120, dated January 30, 1824, and payable to J. Bell, in one year.

The cause was tried here upon the general issue, at November term, 1826. Harford had been defaulted, and it was admitted that the suit was prosecuted for the benefit of the payee named in the note. Eastman admitted that he put his name upon the instrument ; but he introduced evidence to prove, that he put his name to it only as a surety ; that when he signed it, the note was only $20 ; that Harford afterwards, without his knowledge or consent, altered it to $120, by inserting the words "*one hundred and,*" before "*twenty,*" and then passed it to the payee.

The court instructed the jury, that if they believed that the alteration was made by Harford, after Eastman had signed the note, without his consent, the defendant was entitled to a verdict, although the alteration was made before the note was delivered to the payee.

The jury having returned a verdict for the defendant, the plaintiff moved for a new trial, on the ground that the jury had been misdirected.

*Bell,* for the plaintiff, contended, that where one of two innocent parties must suffer by the fraud of a third person, he, who has trusted such third person and enabled him to deceive the other, is to abide the consequences of the fraud, and that this rule of law was applicable to this case. He relied on the case of *Heinet* v. *Page,* decided

in this court in the county of Strafford, September term, 1805, as directly in point.

*Woodbury*, for the defendants.

The alteration of a note, whether made before or after its delivery to the payee, if made without the consent of the maker of the note, renders the instrument utterly void. The altered note is not the contract of the maker, and he may well say *non veni in haec vincula.* To the instrument as altered there has been no assent, no *aggregatio mentium.*

In the present case, there was no express assent to the alteration by Eastman, in any way. He did not sign a blank paper and authorize another to fill it up afterwards. Nor has he in any manner given any sanction to the alteration.

The note was given to Harford by Eastman, was completed and the alteration was afterwards made. Harford, so far as respects Eastman, was a mere agent, or servant, to carry the note to the promissee, and the alteration made by Harford was as much a forgery, in regard to Eastman, as if it had been made by any other agent or servant.

When the promissee took the note, the delivery operted back, as regarded Eastman, to the time he handed the note to Harford. If it were not so, the note was never delivered by Eastman at all, and is void. He then delivered it, or never, as he afterwards did no act whatever as to the note. Such is the settled law as to deeds. 1 N. H. Rep. 353, *Canning* v. *Pinkham.*

The doctrine would be new, and monstrous in its operation, that the maker of a note altered on its passage to the promissee without his consent is bound by the alteration. It is to pronounce a contract his, which he never made.

The doctrine, that he who trusts another must suffer, applies here to the promissee, and not to Eastman. For Eastman never gave any authority, or reposed any con-

fidence in Harford, as to the contents of the note, beyond what would be reposed in any servant, or carrier of the paper. But an alteration by a servant is forgery, renders the note void, yet the loss does not fall on the promiser who trusts the servant to carry the note to the promissee.

The opinion of the court was delivered by

RICHARDSON, C. J. In this case, the defendant put his name to a note for twenty dollars, as a surety for Harford. Before the note was delivered to the payee, Harford, without the consent of the defendant, altered it to a note for one hundred and twenty dollars, and then passed it to the payee. This alteration of the note was clearly a forgery. It was a fraudulent application of a real signature to a false instrument. On what ground, then, can this defendant be holden liable upon this note?

There is a rule of law, that where one of two innocent parties must suffer by the fraud of a third person, he, who has trusted such third person, and enabled him to deceive the other, is to abide the consequences of the fraud, however innocent he may be in other respects. And it is contended, that this rule of law must govern this case. This is understood to be the only ground, upon which it is pretended that the action can be sustained.

We shall, in the first place, attempt to ascertain the nature and extent of the principle on which the plaintiff's counsel relies, by tracing it through some of the cases in which it has been applied, and then consider how it will apply in the case now before us.

The first case to which we shall advert, where this principle has been applied, is *Putnam* v. *Sulivan*, 4 Mass. Rep. 45. In that case, one of the defendants being abroad in Europe, the other having occasion to be absent, entrusted with a clerk of the house to which they belonged a number of papers, on which one of the firm had written the name of the firm in blank. These papers were to be used for particular purposes by the clerk, and he

was directed to deliver one of them to a particular individual, who afterwards, by fraud and imposition, obtained four of the papers, instead of one, and having used one of them for the purpose for which the house had directed a blank endorsement to be given him, and another for making a note, which he negotiated to the plaintiff, with the endorsement remaining in blank. It was held that the endorsers were liable, on the ground that the loss had been occasioned by this misplaced confidence in a clerk too young, or too inexperienced, to guard against the arts of the person who had obtained the papers.

In such a case, whether the loss happened through the incompetency, negligence, or fraud of the person trusted, it is both equitable and just, that it should fall on those who selected him to be trusted, and who, by reposing in him a particular confidence, occasioned the loss. When one man entrusts another with such papers, which may get into circulation under the sanction of his name, it is reasonable that he should be bound, in case they do get into circulation, in the same manner as if he had negotiated them himself. He, for his own purposes and benefit, voluntarily reposes a confidence in another, necessarily attended with some hazard, and ought to bear any loss that may result from the act.

Another case, in which the same rule has been applied, is that of *Thurston* v. *M'Kown*, 6 Mass. Rep. 428. There the maker entrusted the payee with two negotiable notes, in order to accommodate him, instead of one, and the payee, by fraud, negotiated both to persons who *bona fide* paid a valuable consideration, and it was held that the maker was liable to pay both notes.

Nothing can be more reasonable and equitable, than the application of the rule in such a case. The loss arose from the negligence, or improper confidence of the maker, and he ought to bear it, and not the endorsee, who had been guilty of no fault or indiscretion.

In the case of *Lickbarrow* v. *Mason*, 2 D. & E. 63, Ashhurst, Justice, thought this principle a strong and leading clue to the decision of the cause. It was there held, that although the consignor of goods may stop them in transitu before they get into the hands of the consignee in case of the insolvency of the latter, yet if the consignee, having the bills of lading, assign them to a third person for a valuable consideration, the right of the consignor to stop them in transitu is, as against such assignee, divested. This is on the ground that a bill of lading is in its nature transferable, and if the consignor does not expressly confine the delivery of the goods to the consignee only, an assignment by the consignee will bind the consignor. As he has trusted the consignee with an instrument, in its nature transferable, he must be bound by any disposition the consignee may make of it. Nothing can be clearer, than that such an application of the rule is warranted by the soundest principles of equity and justice.

Sewall, J. in *Storer* v. *Logan*, 9 Mass. Rep. 59, states a case in substance thus :—A gives to B an absolute unconditional promise in writing, to accept a bill of exchange to be drawn upon him by the latter, but there is an agreement between them that the bill shall be drawn only under certain circumstances. B draws the bill contrary to the agreement, and by showing the written promise to accept, induces a third person to buy the bill. In such a case, the judge supposes that A would be bound by his written promise, on the ground that he who trusted the fraudulent party, and thereby enabled him to deceive the other, is to abide the consequences of the fraud. And it seems to us that every man, having even an ordinary share of common sense, must, upon such a case, form the same opinion.

So it seems that if a bill of exchange be accepted by A, for the accommodation of B, without any consideration whatever, and there is an agreement between A and B that the bill shall not be negotiated after it becomes

due, still, if A permit the bill to remain in B's hands after it is due, and B in violation of the agreement negotiate it, A will be bound, because it happened through his permission, that the bill gave the drawer power to delude the endorsee. 1 Taunt. 224, *Charles* v. *Marsden*,

There is another case in which this principle has been discussed. *The Bank of America* v. *Woodworth*, 18 Johns. 315, and 19 ditto, 391. The facts of the case were, that James Kane made a note for $2500, payable to John Woodworth, or order, in sixty days. The note was endorsed by Woodworth for the accommodation of Kane, who retained the note, and having afterwards, without the consent of the endorser, inserted in the margin of the note the words "payable at the Bank of America, J. K.," procured it to be discounted at that bank. When the note became due, payment was demanded at the bank and notice given to the endorser. In an action against the endorser, it was held, by the supreme court, that the memorandum fixing the place of payment was an immaterial alteration, and that the defendant, having endorsed the note without any restraint upon the maker, as to the place of payment, must be deemed to have left that circumstance to the discretion and control of the maker, and that the demand was sufficient.

In the court of errors, it was held, by a majority of the judges, that the memorandum was a material alteration of the contract, which discharged the endorser, and that if it had been otherwise, a demand at the place mentioned in the memorandum, would not have been sufficient. But chancellor Kent was of opinion, that the endorsees had a right to consider the memorandum made with the knowledge and consent of the endorser, that if there was any deception practised in that respect, the endorser enabled the maker to do it by returning the note back into his possession with a blank endorsement, without any place of payment designated ; that it was the endorser who led the bank to repose confidence, by setting an ex-

ample of unlimited confidence, and that by a very confidential communication between the maker and the endorser, the maker was enabled to make the memorandum and designate the place of payment, and that the endorser was bound by it.

Whether the principle can be applied to the extent which the learned chancellor here lays down, is a question which we shall not consider at this time, because he states the rule with limitations, which render it wholly inapplicable in the present case. His language is this— " By this very confidential communication between maker and endorser, the former is enabled to make the memorandum and designate the place of payment. Every act of the maker in such a case *that is consistent with the two essential ingredients, viz. the amount and the time of payment*, is to be regarded by the holder as the act of both parties, for the note is put in circulation on their joint act." He thus admits that the rule would not apply, in a case where the sum or date of the note had been altered, nor in any case where there had been an essential alteration.

We are inclined to think, that the true rule to be extracted from all the cases is, that where one man reposes in another a special confidence, and a loss arises from an abuse of that confidence, if the question, who shall bear the loss, arises between an innocent third person and him who reposed the confidence, the law will throw the loss upon the latter.

It remains to be considered, whether this principle is applicable in the case now under consideration. And, on this question, it seems to us that no doubt can be entertained. For this defendant reposed no confidence in Harford which can or ought to render him liable to pay this note. All he did was to put his name to a note for twenty dollars, as a surety for Harford. From the very nature of the case, Harford was entitled to the possession of the paper for the purpose of passing it to the payee. What confidence was reposed in Harford by

Goodman
v.
Eastman et a.

this defendant ? Not any, which every man who sends out a negotiable security into the world, and which every bank that issues bills, does not repose in all those into whose hands they may come. The confidence he reposed in Harford was the confidence which all who issue negotiable paper repose in the public—a confidence that the paper will not be feloniously altered. And if this defendant can be held in this case, the principle by which he must be held chargeable, will render every man who signs and sends into the world negotiable paper, and every bank which issues bills, answerable to innocent holders for any sum to which they may be altered feloniously. For, we repeat it, this defendant has reposed no confidence in Harford which every one who sends abroad his name upon negotiable paper does not repose in all those into whose hands it may come. This view of the subject seems to us to be decisive. The payee has been deceived and defrauded, not by any abuse of the confidence which the defendant reposed in Harford, and for which the defendant ought to be responsible, but by a forgery, for which he is not responsible. 5 B. & C. 750, *Hall* v. *Fuller.*

We are therefore of opinion, that there must be

*Judgment on the verdict.*