## HAINES *vs.* DENNETT.

The maxim, "*nemo allegans turpitudinem suam est audiendus,*" is not a rule of evidence, regulating the admission of testimony, but a principle applicable only to the right of a party to recover.

If it be law, that a party to a negotiable instrument shall not testify to facts which show it void in its creation, because the policy of the law favors the circulation of negotiable paper, and aims to give confidence to subsequent holders, the exception to the rule which permits him to testify to facts which occurred after the execution of the note, showing it to be void, is unsound; for he may equally defraud innocent holders, by proving that he, without the assent of the surety, and after its execution, altered the note.

But this rule is not law. In a suit by the *bona fide* indorsee of a note against the surety, the principal, being released by the surety, is a competent wit-

Haines *v.* Dennett.

ness for him, to prove that the maker, after the execution of the note, and without the knowledge of the surety, at the request of the payee, altered the note by inserting the words, " or order," therein.

The insertion of such words is a material alteration of the note, and renders it void in the hands of an innocent indorsee, as against the surety.

The case of *Houghton vs. Page*, 1 *N. H. Rep.* 60, overruled ; which holds that one of the makers of a note is not competent to prove that it was given upon an usurious consideration.

ASSUMPSIT, on a promissory note, made by one Emery as principal, and the defendant as surety, payable to one Hawes, or order, and by him indorsed to the plaintiff.

The defendant, having released Emery, the principal, offered in evidence the deposition of Emery, to prove that the words, " or order," had been inserted in the note after its execution, and without his knowledge, by Emery, at the request of the payee.

The plaintiff objected to the admission of the evidence, on the ground that Emery, though released, was not a competent witness to invalidate his own note in the hands of a *bona fide* indorsee ; but the objection was overruled, and the deposition admitted.

A verdict was taken for the defendant, to be set aside and judgment entered for the plaintiff, if the court should be of opinion that the deposition was improperly admitted.

*Hackett,* for the plaintiff.

*James Bell,* for the defendant.    The deposition was properly admitted, to show facts which happened subsequent to the execution of the note.    *Ames* vs. *Withington,* 3 *N. H. Rep.* 115 ; *Warren* vs. *Merry,* 3 *Mass. R.* 27 ; *White* vs. *Kibling,* 11 *Johns.* 128 ; *Woodhull* vs. *Holmes,* 10 *Johns.* 231 ; *Skilding* vs. *Warren,* 15 *Ditto* 270 ; *Powell* vs. *Waters,* 17 *Ditto* 176 ; *Hubbly* vs. *Brown,* 16 *Ditto* 70 ; *Tuthill* vs. *Davis,* 20 *Ditto* 285 ; *Stafford* vs. *Rice,* 5 *Cowen* 33 ; *Bank of Utica* vs. *Hillard,* 5 *Cowen* 153 ; *McFadden* vs. *Maxwell,* 17 *Johns.* 188 ; *Williams* vs. *Walbridge,* 3 *Wend.*

415; *Bryant* vs. *Ritterbush,* 2 *N. H. Rep.* 212; *Greenough* vs. *West,* 8 *N. H. Rep.* 400; *Vallett* vs. *Parker,* 6 *Wend.* 615; 1 *Caines* 258; *Chitty on Bills* 284; *Parker* vs. *Hanson,* 7 *Mass.* 470; *Barker* vs. *Prentiss,* 6 *Mass.* 430; 2 *Stark. Ev.* 179; *Townsend* vs. *Bush,* 1 *Conn. R.* 260.

GILCHRIST, J.    The question in this case is, whether the maker of a promissory note, being released by the surety, is a competent witness, in a suit by a *bona fide* indorsee against the surety, to prove that the maker, without the knowledge of the surety, at the request of the payee, had altered the note.

The alteration was a material one.    *Kershaw* vs. *Cox,* 3 *Esp.* 246; *Knill* vs. *Williams,* 10 *East* 431, in which last case it is said by Le Blanc, J., that the insertion in a bill of exchange, of words to make it negotiable, is a very material alteration.

And a material alteration, unauthorized by the maker, avoids the instrument; and no action can be afterwards brought upon it, even by an innocent holder, for a valuable consideration.    *Master* vs. *Miller,* 4 *T. R.* 320; *S. C.* 2, *Hen. Bl.* 141.

The question, therefore, is, whether the evidence offered is competent to prove the alteration.

Until the decision of the case of *Walton* vs. *Shelley,* 1 *T. R.* 296, the rule and its exceptions were, in England, that every person was a competent witness who was not interested in the event of the cause, rendered infamous by a conviction of an offence, or excluded for infidelity.    In that case, a new exception was introduced, "that no party who has signed a paper or deed shall ever be permitted to give testimony to invalidate it."    This exception prevailed in England until the case was overruled by *Jordaine* vs. *Lashbroake,* 7 *T. R.* 597, having been recognized but a few years, and the common law doctrine reëstablished; and it has been adhered to since that time.    *Ashton* vs. *Longes,* 1 *M. & M.* 127.

The supreme court of New-York, in the case of *Winton* vs. *Saidler*, 3 *Johns. Cas.* 135, recognized the rule adopted in *Walton* vs. *Shelley.* But in *Powell* vs. *Waters*, 17 *Johns.* 176, Spencer, C. J., says, that the court in *Winton* vs. *Saidler* undoubtedly meant to be understood that a person whose name was on a negotiable paper should not be heard to say that the paper thus sanctioned by his name was tainted when it passed from his hands.    In the case of *Stafford* vs. *Rice*, 5 *Cowen* 23, Savage, C. J., says, that " Winton *vs.* Saidler has been repeatedly overruled, and cannot now be considered as law."    And Woodworth, J., says that it was directly overruled in *Powell* vs. *Powers*, meaning probably *Powell* vs. *Waters*, as there was not at that time any such case as *Powell* vs. *Powers* in the New-York reports.    It is also expressly denied to be law by Savage, C. J., in the *Bank of Utica* vs. *Hillard*, 5 *Cowen* 153.    The case of *Stafford* vs. *Rice*, 5 *Cowen* 23, above referred to, decides that one whose name appears upon negotiable paper may, notwithstanding, be a witness to prove it void in its inception, for usury or other cause.

In Connecticut it has been held that a person is not a competent witness to impeach a writing which he has subscribed, on the ground of policy.    *Allen* vs. *Holkins*, 1 *Day* 17 ; and in the case of *Cowles* vs. *Wilcox*, 4 *Day* 108, it is left doubtful whether a person who has no interest in the suit can be admitted as a witness to impeach a security which he has given.    In *Webb* vs. *Danforth*, 1 *Day* 301, it is held, that a party to an instrument may be a witness to facts subsequent to the execution thereof, which tend to invalidate it. But in the case of *Townsend* vs. *Bush*, 1 *Conn. R.* 260, it has been decided, after much investigation, that a party to a negotiable instrument, if not interested in the event of the suit, is a competent witness to prove it usurious in its creation.    The supreme court of Massachusetts, in the case of *Warren* vs. *Merry*, 3 *Mass.* 27, and *Churchill* vs. *Suter*, 4 *Ditto* 156, adopted the rule of Walton *vs.* Shelley, and

have adhered to it in numerous decisions subsequent to those. *Jones* vs. *Coolidge*, 7 *Mass.* 199, and various cases cited in a note to the case of *Worcester* vs. *Eaton*, 11 *Mass.* 375, *Mr. Rand's edition.* In *Butler* vs. *Damon*, 15 *Mass.* 223, the court say, that a party to a negotiable security shall not be received to show facts antecedent to the transfer, whereby the holder is to be defeated of his recovery; and recognize this as the principle of *Churchill* vs. *Suter*.

The same rule is adopted in Maine. *Deering* vs. *Sawtell*, 4 *Greenl.* 191; *Adams* vs. *Carver*, 6 *Ditto* 390; *Chandler* vs. *Morton*, 5 *Ditto* 37; *Clapp* vs. *Hanson*, 3 *Shepley* 345; and these cases proceed upon the authority of *Churchill* vs. *Suter*, and the other decisions in Massachusetts in accordance with it.

In this court it has been held, that a party who has put his name to a negotiable instrument is not a competent witness to prove that the consideration was usurious, and the testimony of the maker was rejected. *Houghton* vs. *Page*, 1 *N. H. Rep.* 60. In this case the court say, that the rule is too well settled to be questioned; and reference is made to *Warren* vs. *Merry*, 3 *Mass.* 27; *Churchill* vs. *Suter*, 4 *Ditto* 156; *Manning* vs. *Wheatland*, 10 *Ditto* 502, and *Coleman* vs. *Wise*, 3 *Johns.* 165; and the principle is also recognized in *Bryant* vs. *Ritterbush*, 2 *N. H. Rep.* 212, and *Carleton* vs. *Whitcher*, 5 *Ditto* 196.

The supreme court of the United States have adopted the same rule. *Bank of U. S.* vs. *Dunn*, 6 *Pet.* 51. No other reason is given in this case, than that one who has given a note the sanction of his name, shall not invalidate it by his testimony. *Bank of the Metropolis* vs. *Jones*, 8 *Peters* 12.

The case of *Walton* vs. *Shelley* is the foundation of all the subsequent decisions in accordance with it. The cases which follow it, and which have been referred to above, contain no other, nor different reasons for the rule, than those given by Lord Mansfield, and his associates. Upon principle, then, the decisions in this country are of no greater

weight than *Walton* vs. *Shelley ;* and if the reasoning in that case be unsound, the case of *Houghton* vs. *Page*, 1 *N. H. Rep.* 60, cannot be held to be law.

In *Walton* vs. *Shelley*, Lord Mansfield says : " But what strikes me is, the rule of law founded on public policy, which I take to be this, that no party who has signed a paper or deed shall ever be permitted to give testimony to invalidate that instrument which he hath so signed. And there is a sound reason for it, because every man who is a party to an instrument gives a credit to it. It is of consequence to mankind that no person should hang out false colors to them, by first affixing his signature to a paper, and then afterwards giving testimony to invalidate it. It is emphatically right in the case of notes, for in consequence of different statutes two very hard cases have arisen. First, with respect to a gaming note, which, though in possession of a *bona fide* purchaser, without notice, is void. It is similar in the case of usury : a note given for an usurious consideration, though in the hands of a fair indorsee, is equally void. And, therefore, whenever a man signs these instruments he is always understood to say that, to his knowledge, there is no legal objection whatever to them. The civil law says, '*nemo allegans suam turpitudinem est audiendus.*' "

But the general proposition in this case, after having been denied by Lord Kenyon, in *Bent* vs. *Baker*, 3 *T. R.* 34, was finally overruled in the case of *Jordaine* vs. *Lashbrooke*, 7 *T. R.* 601, at which time but two of the judges who were on the bench when *Walton* vs. *Shelley* was decided, were in office. These were Grose and Ashhurst. Of these, in *Walton* vs. *Shelley*, Ashhurst coincided with Lord Mansfield, but the opinion of Grose is not reported. In the case of *Jordaine* vs. *Lashbrooke*, Ashhurst adhered to his former opinion, but Grose agreed with the court. In the case of *Jordaine* vs. *Lashbrooke*, Lord Kenyon reasons thus : " The proposition attempted to be established by the plaintiff is this : that for some technical reason, or for some reasons of

policy, a court of justice must shut its ears, and not suffer facts to be disclosed which may be laid before them by a witness who is not infamous in his character, and who has no interest in the cause. If the law be so, there is some novelty in it. I have always understood the rule to be, that where a witness is infamous, and his record of conviction is produced, or where he is interested in the event of the cause, he cannot be received; but to carry the rule beyond that would be extending it farther than policy, morality, or the interests of the public, require. The rule contended for by the plaintiff is this, that however infamously you, (the defendant) have been used; whatever fraud may have been committed on you; whatever may be the rights of other persons, if I, (the plaintiff) the party to the fraud, can get on the instrument the name of the person who may be the only witness to the transaction, I will stand entrenched within the forms of law, and impose silence on that only witness, though he be a person of unimpeachable character, and not interested in the cause. But I cannot conceive on what ground such a proposition can be established. It is contradicted by every hour's experience; it would tend to show that a party to an instrument shall not be permitted to contest the validity of it in a court of law, not only by his own evidence, but by any evidence whatever." Mr. Justice Grose says, that there can be no reason why a man should not disclose a fact, which, if true, it is his duty to the public to disclose; and that if, by his assistance, the law has been violated, he owes to the public, by way of retribution, a disclosure of the circumstances. He also says that the maxim, "*homo allegans suam turpitudinem, non est audiendus,*" has no application to witnesses guilty of criminal actions.

Throughout this case it was admitted, that there was no foundation in the authorities for the doctrine of *Walton* vs. *Shelley.*

The same tribunals which, in the case of *Walton* vs. *Shelley,* recognized a doctrine alleged to be of great import-

ance to the commercial world, at the same time insisted on a distinction which still exists in courts where *Walton* vs. *Shelley* is not yet overruled. The distinction first appears in the case of *Charrington* vs. *Milner*, *Peake* 6, where the indorser was admitted to prove payment of the note, because, as Lord Kenyon said, the evidence not proving the note *originally* void, he was clearly competent. *Humphrey* vs. *Mason*, *Peake* 53, is to the same effect. In these cases, which were tried before the decision of *Jordaine* vs. *Lashbrooke*, Lord Kenyon, sitting at nisi prius, undoubtedly felt himself bound to follow the doctrine of *Walton* vs. *Shelley*. In *Adams* vs. *Lingard*, *Peake* 117, and *Phetheon* vs. *Whitmore*, *Peake* 40, the question is raised, but not decided. These cases seem to turn upon the question, whether they are within the decision of *Walton* vs. *Shelley*. Whether there was any reason in the distinction, is a point which appears to have been overlooked.

The cases in New-York and Massachusetts give no other reason for the distinction, than that the particular case is not within that of *Walton* vs. *Shelley*. *Warren* vs. *Merry*, 3 *Mass. R.* 28 ; *Barker* vs. *Prentiss*, 6 *Ditto* 430 ; *Parker* vs. *Hanson*, 7 *Ditto* 470. The case of *Woodhull* vs. *Holmes*, 10 *Johns.* 231, is decided upon the authority of the Massachusetts cases. Nor is any reason given for the distinction in *Skilding* vs. *Haight*, 15 *Johns.* 270.

We cannot perceive any sound reason for this distinction. Notwithstanding the adherence of some tribunals to the doctrine of *Walton* vs. *Shelley*, this exception gives the impression, that the application of the rule is avoided whenever it is practicable. If the doctrine of *Walton* vs. *Shelley* first came into existence with that case, as is said in *Jordaine* vs. *Lashbrooke*, this exception was not known until afterwards ; and the ground of the exception seems to be, that the case was not within *Walton* vs. *Shelley*, rather than because it had any particular reason or policy to recommend it.

If it be contrary to public policy and morality that a party

to a negotiable security shall testify to facts which show it void in its creation, because he has given the paper the sanction of his name, is it not equally contrary to policy and morality, that he should disclose facts which happened after he has negotiated the paper, and which avoid the note; when he himself, taking advantage of his situation as a party to the note, has committed the wrongful acts? If the party should not testify to facts which show the note void when he transferred it, upon what principle should he disclose his improper dealing with the note after it is in the hands of his indorsee? He may not deceive the indorsee, but he deceives the subsequent holders who, it is said, take the paper, relying on his signature. Policy and morality require, it is argued, that he shall not testify in a suit against the surety, that it was void at the time of its execution, and that he knew it, although the surety might not have known it. But the same policy and morality do not hinder him from testifying, that while the note was in the hands of the payee, he, the maker, altered the note without the assent of the surety. Upon this reasoning, policy and morality are to guide us only in relation to certain favored parties in interest. It is extremely impolitic and immoral that the world, who may take the bill, should be deceived; but it is both politic and moral, or at least it is not the reverse, that a fraud should be committed upon the surety. If the rule be correct, the exception certainly is not; for nothing that deserves the name of principle can be so fluctuating and flexible. A rule founded upon public policy and morality, is intended to prevent certain results assumed to be opposed to that policy, and subversive of that morality. The rule must be applied in all cases where the same results follow; and no exception can be sound which permits the rule to be relaxed where the consequences are the same. We think, therefore, that the deposition of the maker is not admissible under the exception; but if admissible, it is upon the broad ground that

the rule adopted in *Walton* vs. *Shelley*, and followed and applied by this court, in *Houghton* vs. *Page*, is not law.

There are two reasons given for the rule. One of them is, that the maxim of the civil law, "*nemo allegans suam turpitudinem est audiendus*," is applicable to the case of a witness whose name is upon the security. The rule, with some modification, has been practiced upon, at common law, in relation to parties to a suit. But the question is, if it be applicable to witnesses.

Mr. Justice Grose, in the case of *Jordaine* vs. *Lashbrooke*, says, that "this as a maxim applied to parties in a case may in some cases be true; but there, if both are *participes criminis*, the rule applies, *potior est conditio defendentis*. A man shall not sustain an action upon a ground which proves him guilty of a breach of the law. So a man shall not recover money due upon an illegal consideration, such as usury, gaming, smuggling, or the like. But this rule does not extend to shut the mouths of witnesses guilty of criminal actions; if it did, witnesses daily received in courts of justice, and whom the policy of the law invites to come forward, must be rejected; such as accomplices, and others concerned in illegal transactions." So, in trover against a pawnbroker, the servant embezzling his master's goods, and pawning them, is admitted to prove that fact. *Buller's Nisi Prius* 290. So, a witness who admits that he has been in prison under judgment for grand larceny, is competent. *Rex* vs. *Castel Careinion*, 8 *East* 73. So, if he admit that he has committed perjury on another occasion. *Rex* vs. *Teal*, 11 *East* 309. So, a servant who has embezzled money or notes of his master, is an admissible witness, provided he has a release, against the person who received the property of him, in an action brought by the master to recover the amount. *Clark* vs. *Shee, Cowp.* 199. And a witness is admissible to prove that he forged a will. *Wright* vs. *Littler*, 3 *Burrow* 1255. It is also remarked, in 2 *Evans's Pothier* 276, that the real principle of the maxim is no more

than that a person shall not found any claim, or defend upon his own iniquity, and that it has no relation to the case of a witness. *Rands* vs. *Thomas*, 5 *M. & S.* 244.

We think the maxim is not to be regarded as a rule of evidence, but as a principle applicable only to the right of a party to recover. As the authorities show that it has not been applied to witnesses, the rule can derive no support from it.

The other reason for the rule is the very comprehensive one, that it is contrary to policy to sustain the negotiability of commercial paper by the admission of such evidence. But the general rule of law is to admit, rather than to exclude testimony; to ascertain the truth, rather than to shut it out. It is an evil, doubtless, that a note is ever held to be void in the hands of an innocent holder; but the fraud upon the surety is an evil equally to be guarded against. We cannot apply to the surety the rule of law, that where one or two innocent parties must suffer by the fraud of a third person, the party who has trusted such third person, and enabled him to deceive the other, is to abide the consequences of the fraud, however innocent he may have been in other respects. For any unauthorized dealing with the note, after the surety had signed it, we do not see that the surety is responsible. The maker of the note, as such, has no authority to alter a note at the expense of the surety. The case of *Goodman* vs. *Eastman*, 4 *N. H. Rep.* 455, decides that the maker cannot alter a note from twenty dollars to one hundred and twenty dollars, and thereby bind the surety to pay the larger sum; and the principle of that case, and the reasoning, are equally applicable to the case before us. Nor do we anticipate the existence of any evil effects, so injurious to the public as the exclusion of a witness, not interested nor infamous, and who knows the facts. Justice can be done the plaintiff only by shutting out the truth, and doing injustice to the surety. If the truth be admitted, let the evil fall where it may. It is a misfortune

to the plaintiff, but one from which we can relieve him only by excluding the facts. In the language of Mr. Justice Lawrence, in *Jordaine* vs. *Lashbrooke*, " if the matter may be proved by a witness, not a party to the bill, how can a defendant, not estopped to make such a defence, be deprived of the testimony of a witness, called to establish a defence, which the law allows, and not interested nor infamous? It is certainly of consequence to prevent men hanging out false colors; but the rule must be applied to theparties to the cause, or you may prejudice men who have not hung out such colors."

We consider the rule of law, that all witnesses shall testify, who are not excluded for interest, infamy, or infidelity, as of the greatest consequence to the cause of justice. It is of too much consequence to be restricted by the policy of the law as to the circulation of negotiable paper. We are, therefore, of opinion that the case of *Houghton* vs. *Page,* 1 *N. H. Rep.* 60, is not law; (*See* 9 *N. H. Rep.* 348; 10 *N. H. Rep.* 343;) that the deposition of the maker of the note, in this case, was properly admitted; and that there be

*Judgment on the verdict.*