# BELKNAP,

## EVANS *v.* GALE.

*The plaintiff, holding a note against one Knight, which was of but little value, owing to the poverty of the maker, indorsed it without recourse, and transferred it. Being notified that a demand against him was left in an attorney's office for collection he gave his son five dollars and sent him to settle such debt as he should find, if he could. The son found at the attorney's office the above note, and after some negotiation with the defendant, who had left the note there, borrowed some money, and with that and the money in his possession, paid the note. Nothing was said about a purchase and sale of the note. The plaintiff then brought an action for money had and received, alleging that his son was not authorized to pay the note. Held, that the action could not be maintained without a return of, or an offer to return the note, in order to place the defendant in as good a condition as he was in before he parted with it.*

ASSUMPSIT, for money had and received, brought to recover the sum of five dollars paid by one Hanson Evans, Jr., to the defendant, without authority from the plaintiff.

The plaintiff offered in evidence the deposition of Hanson Evans, Jr., who testified, that he was the son of the plaintiff, who, in the month of April preceding, received a letter from George G. Fogg, Esq., of Gilmanton, stating that there was a small account against him left in his office for collection, but not naming the person who left it. His father, not being in debt to any person that he knew of, requested him to go and see what it was, and if it was any thing he could settle, to settle it as cheap as he could. His instructions were to settle the debt if he could find any ; and accordingly he went to Mr. Fogg, and asked him if there was an account in his office against William Evans. He said there was. The witness then went with Fogg to his office and he took out a note against Daniel P. Knight, which was

Evans *v.* Gale.

indorsed by the plaintiff, and which Fogg said was left there by Smith Gale. The witness remarked that it was left there by George Sleeper, but Fogg said it was not. The witness then went to see Sleeper and get him to go and see Gale. Sleeper said to Gale that it was a hard case, and he must settle it as cheap as he could. There was then due on the note about $15.25. The witness asked Fogg what it was best to do about settling the note. Fogg said he would not advise him to pay it. Gale came into the office, and, this being on Monday, the witness requested him to wait until the last of the week, and then he and his father would come and see about settling it. Gale said if he had to wait until the last of the week he would have the whole face of the note, and if it were not then settled, he would sue it. Fogg said he could sue it. Gale said if he could not get it, he would go to law about it. The witness said they had rather settle it than go to law about it, for they had never got into the law. He then settled it, paying twelve dollars for the debt, and half a dollar for the letter. The plaintiff had indorsed the note "not accountable," and sold it to Sleeper for less than the sum due upon it, and received his pay for it in goods, and gave the witness five dollars to settle the debt with, when he should find out what it was. When he returned home, he told the plaintiff what the debt was and how much he had paid, and the plaintiff said the witness had settled it as cheap as he expected, but that he ought not to have paid any thing, for they could not have got any thing. The witness had $5.50 of his own, and borrowed $2, and was thus enabled to pay the note. He did not buy or offer to buy, nor did he hear any thing said about buying the note ; he said he was quite deaf and unable to hear voices in their ordinary tones ; and that Daniel P. Knight was poor, and he should not consider his note good.

It appears that the note mentioned in the deposition was payable to the plaintiff or order, and was indorsed by him " William Evans, not holden." There was evidence that the note, after it was thus paid by the witness, was sent by the plaintiff to his counsel, with instructions to collect the money of the defendant, but the note had never been returned or offered to the defendant.

Upon these facts, the court directed a nonsuit, subject to the opinion of the Superior Court.

*James Bell*, for the plaintiff.   The sum of five dollars of the plaintiff's money was, as the plaintiff contends, paid by Hanson Evans to the defendant's attorney without authority, and upon a pretended claim for which the plaintiff was not liable, and he therefore has a right to recover it in a count for money had and received.   All the facts stated in the case show that the defendant *obtained this money* by imposition, and that he retains it without right.

The question is, whether the payment was made without authority; and this question, as the direction of the plaintiff to his agent was merely verbal, was, as he conceives, proper to be submitted to the jury.   There was evidence that Hanson Evans made this payment without authority, proper to be submitted to a jury, and upon which the jury would have been justified in finding as follows:

1. That the direction of the plaintiff to his son, was to settle a *debt actually due from him*, and not any claim made against him however false or fictitious.   The fair construction of what the plaintiff said to his son is, that if he found any debt against him, (he not being aware of the existence of any,) he should settle it as cheap as he could.

2. That the plaintiff gave no authority to his son to settle what was not claimed as a debt, or direct liability, but as a collateral liability, as indorser of a note.   There is no probability that either he or his agent had such a claim in contemplation, which is, in its nature, a mere suretyship.   It is apprehended that an agent employed to pay the debts of the party, could not, without going beyond the scope of his authority, undertake to pay debts upon which his constituent was liable merely as surety, indorser, or guarantor.   Debt will not lie against an indorser, nor upon any collateral contract.   1 Ch. Pl. 106.   The liability of an indorser is only conditional, and should be declared on accordingly.   Chitty on Bills, 464.   And if the plaintiff had not in view any mere conditional liability, it is still less probable that

he could have had reference to a case where he had protected himself from liability by the form of the indorsement.

3. That there was a limitation upon the authority of Hanson Evans, in the fact that he was furnished by the plaintiff with the money with which he was to pay the debt, and he had no authority to pay a debt of greater amount. The debt was said to be small, and, no doubt, for that reason, was supposed to be forgotten. The agent was to settle such a debt as could be settled for five dollars, as is apparent from the fact that no provision was made, and no direction given, for providing the means for a larger payment. Hanson Evans was a special agent, and he could not go beyond the actual delegation of authority. Story on Agency, 74, 89, 115 ; *Peters* v. *Ballistier,* 3 Pick. 395 ; *Webber* v. *Williams College,* 23 Pick. 302. He did not represent himself as having any particular authority, but on the contrary, hesitated to make the payment required of him, and asked time to consult his principal upon the subject. But it would not have altered the case if he had represented himself as having a general authority, as it was the duty of the party dealing with him to inquire into his power as agent. *McCourbie* v. *Davies,* 6 East, 17 ; *Barring* v. *Corrie,* 2 B. & A. 149 ; *Martini* v. *Coles,* 1 M. & S. 140. On the present evidence, no ratification by the principal, of the act of the agent, can be pretended. He told the agent, upon being informed of what he had done, that he ought not to have paid any thing. He assumed no control of the note beyond what was necessary to secure its use as evidence in the suit which he immediately decided to bring to recover the money. As he does not claim upon the ground of rescinding the contract, but contends that none was ever made by any agent authorized by him, no return of the note to the defendant was necessary. If it is of any value, the defendant has his remedy for it against the agent, or, after a demand, against any party into whose possession it may have come. A return of the subject of the contract is never necessary, unless the party seeks redress by rescinding the contract. *Shepherd* v. *Temple,* 3 N. H. Rep. 455.

For these reasons, the plaintiff submits that it should have

been left to the jury to find, from the direction given by the plaintiff to his agent, and the surrounding circumstances, whether the payment was unauthorized. This was a proper question for the jury. *Foot* v. *Wiswall*, 14 Johns. 304; *O'Kelly* v. *O'Kelly*, 8 Met. 436; *Locke* v. *Brown*, 2 Shep. 108.

*Vaughan*, (with whom was *Perley*,) for the defendant.

No offer to return the note to the defendant has been shown, and therefore the plaintiff is not entitled to recover upon the ground of want of consideration, or imposition. The antecedent authority was sufficient. If the agent do what he is authorized to do, and more, his acts still bind the principal so far as they are within the authority, if distinguishable. Story on Agency, 157, 158; Co. Litt. 258 a; Com. Dig., Attorney, C. 15. On this point, the evidence comes from the plaintiff's own witnesses, is not contradicted, and the jury were not at liberty to disregard it. Besides, the authority was made good by subsequent ratification; and that is the same as an original authority, even as to third persons. Story on Agency, 239, 245; *Despatch Line* v. *Bellamy*, *&c.* 12 N. H. Rep. 205; *Payne* v. *Smith*, 12 N. H. Rep. 34. So long an acquiescence is a ratification. Story on Agency, 248. So an omission to disavow the act is a ratification. *Bredin* v. *Dubarry*, 14 S. & R. 27; *Caines* v. *Bleecker*, 12 Johns. 300; 2 Greenl. Ev. 50. A ratification may be shown from his acts, even though he expressly declared he would not sanction it. *Hatch* v. *Taylor*, 10 N. H. Rep. 538.

GILCHRIST, C. J. This was not a sale of the note by the defendant to Hanson Evans, or to the plaintiff. The facts stated in the case negative that idea. Hanson Evans went as the agent of the plaintiff, to pay such debt as he should find against his principal, and he delivered the money to the defendant, in payment of what he supposed was a debt against the plaintiff. When he received the note from the defendant, he took it as evidence of the discharge of a debt. The facts found by the case will warrant no other construction. This note the plaintiff now

has. He is not holden upon it, for he has guarded himself, by his restricted indorsement, against any liability. He now seeks to recover the money paid by his agent, upon the ground that the agent had no authority to pay such a claim; that the whole transaction having been unauthorized, no rights could be acquired under it, and that consequently the money paid the defendant, was received to the use of the plaintiff.

In the case of *Shepherd* v. *Temple*, 4 N. H. Rep. 458, it is said, that a return of a chattel is not necessary to be shown in any case, unless when the purchaser attempts to seek redress by rescinding the contract. But that was a case of a sale of chattels, and to that the remark may be applicable. We are not now called upon to controvert it, as in the present case nothing was bought or sold, and the transaction was the mere payment of a debt.

But if the act of Hanson Evans were what it is considered to have been by the plaintiff, then he retains the note of Knight without having any claim upon it, and ought to return it. He should not compel the defendant to bring a suit to recover the property he delivered to the plaintiff. If the plaintiff chose to disavow the authority of Hanson Evans, he ought not to retain any property which he procured of the defendant by Hanson Evans's act. He should place the defendant in as good a condition as he was in before he parted with the note. The exact value of the note, it is not material to ascertain. It may be of some value against Knight, or against some person who has held it; and at any rate, whether of much or of little value, it is the property of the defendant, upon the plaintiff's view of the case. For aught that appears in the case, the defendant supposed that Hanson Evans was acting by authority, and that his doings would be ratified by the plaintiff. As there was no return of the note, nor offer to return it, in order to place the defendant in as good a condition as he was in before, the ruling of the court was correct, and the plaintiff must become

*Nonsuit.*