## WINKLEY *v.* FOYE.

Evidence that money paid to a creditor by an agent of the debtor and on his account, was not furnished to the agent by the debtor, is inadmissible in an action by the agent against the creditor to reclaim the money.

If an agent pay money for his principal, though the money was his own, it passes to the creditor as the money of the principal.

ASSUMPSIT, for money had and received by the defendant to the plaintiff's use.

Plea, the general issue.

Upon the trial it appeared in evidence that the plaintiff, on or about the 12th of January, 1848, left with the defend-

ant the sum of thirty dollars, on account of a suit which had then been commenced by the defendant against Samuel Laighton and Mark H. Winkley. The plaintiff claimed that he left the money with the defendant as a friend of the parties to that action, the plaintiff being his nephew and the defendants his son and son-in-law, under an agreement between him and the defendant that it was to be in full satisfaction of the debt and costs in the suit; and that it was his own money, and not represented by him at the time it was so left, to be the money of any other person. The defendant claimed that the money was the money of Samuel Laighton, and was tendered to him by the plaintiff as the money of said Samuel Laighton, and represented by the plaintiff, at the time it was so left, to be the money of said Laighton.

The defendant introduced evidence tending to show that the plaintiff testified as a witness on the trial of said action, *Foye* v. *Laighton* and *Winkley*, that the money so left by him with the defendant was not his money, but was Samuel Laighton's; and also introduced as a witness, David J. Holmes, who testified that he was present when the money was delivered by the plaintiff to the defendant, that the plaintiff then said he had brought the money for Samuel Laighton ; that he, (Laighton,) was going to Barrington to work, and wanted him, the plaintiff, to come and tender that money ; and this was all the testimony introduced by the defendant, having any tendency to prove that the money was Samuel Laighton's.

Samuel Laighton was thereupon introduced as a witness by the plaintiff, and testified that he did not furnish the said money to the plaintiff, to which testimony of Laighton the defendant objected, but the court overruled the objection, and admitted the evidence.

It further appeared in evidence, that judgment was rendered for the plaintiff in the suit, *Foye* v. *Winkley & Laighton*, upon the verdict of a jury, for the whole amount of the

claim covered by the declaration in that action, and interest thereon, and that two executions had been issued thereon and returned, in part satisfied by other property than the money so left with the defendant, and that said money had not been allowed upon, or toward said judgment.

The defendant offered to prove that on the trial of said action, *Foye* v. *Winkley* and *Laighton*, the defence set up was that the contract under which the said Foye claimed in that action was the several contract of Laighton, and not the joint contract of said Winkley and Laighton, and that the plaintiff in that action, (the defendant in this,) offered on said trial to admit the money left by the plaintiff with him, as part payment and satisfaction of the claim made by said Foye in that suit, but the defendants in that suit refused to have it so appropriated. To this evidence the plaintiff objected, and it was rejected by the court.

The jury returned a verdict for the plaintiff, and the defendant moved that the same be set aside, and a new trial granted, on account of said alleged erroneous rulings of the court.

*Christie & Kingman*, for the defendant.

I. The testimony of Samuel Laighton was not admissible, and should have been rejected.

The defence was that the money was tendered to, or left with the defendant, by the plaintiff, as the money of Samuel Laighton, and represented by the plaintiff, at the time it was so left, to be the money of said Laighton, and that the plaintiff afterwards testified that it was Samuel Laighton's money.

The defence then was not that the money was in fact Samuel Laighton's, but that the plaintiff so represented it at the time, and afterwards testified that it was so. The question and matter in issue was not the ownership of the money; but only what the plaintiff said at the time he left it, and what he afterwards swore in relation to the owner-

ship. The ownership was immaterial; what Winkley said was the only material thing. We offered no evidence as to the ownership, but only what Winkley said about it.

The testimony of Samuel Laighton had no legitimate tendency to disprove that Winkley said at the time he left the money, and at the time he testified, what the defendant says and attempted to prove he did say and testify. But still it is manifestly calculated to prejudice the defendant on that material matter, and in all other respects was immaterial.

II. The evidence offered by the defendant, to prove that he was willing and offered on the trial of said case, *Foye* v. *Laighton* and *Winkley*, to allow the money left with him by the plaintiff towards his claim, on account of which it was tendered or left, would have shown that the defendant had offered to apply the money towards the claim on which it was tendered; and as it appears that the judgment recovered in that case is still in part, (in fact for more than thirty dollars,) unpaid and unsatisfied, the presumption would fairly have arisen, had the proof been admitted, that the defendant had always been ready and willing to apply the said thirty dollars towards the payment of his claim against said Laighton and Winkley; and hence that the plaintiff had no right to recover it.

*Woodman*, *Wells* and *Bell*, for the plaintiff.

I. The plaintiff contends that the testimony of Samuel Laighton was properly admitted, and had a tendency to show that the plaintiff did not testify as the defendant contended that he did.

It was left to the jury to decide whether such representation as was contended by the defendant was made by Paul Winkley, and their verdict determines that no such representation was made.

Also, that the defendant contended that the money so tendered was in fact the money of Samuel Laighton; and

the counsel for the defendant, when asked at the trial if they should contend that said money was the property of said Laighton, replied that they should so contend, and thereupon said Laighton was admitted to testify.

If this fact is now disputed by the defendant, the plaintiff will move for liberty to have the case amended.

II. That if the testimony of Samuel Laighton as to the ownership of the money, had no such tendency as we contend for, then it was immaterial, and the verdict should not be set aside because of its admission.

III. That the evidence offered to prove the matters relating to the action of *Foye* v. *Winkley* and *Laighton*, was immaterial, and properly excluded.

BELL, J. *Prima facie* the action of assumpsit for money had and received puts in issue the title to the money, the ownership or property of the sum claimed, and the general issue denies the plaintiff's title to it. And in this view the title to the sum in controversy might be in dispute here. But as the general issue embraces many grounds of defence, it is apparent that the question of title does not necessarily arise. The defendant may deny the receipt of any money, or he may allege that he received it under such circumstances that he is not accountable to the plaintiff for it. Neither of these defences raises any question as to the ownership of the money. So there are many cases where the defence rests on the ground that by the delivery of the money to the defendant the title to it became changed, and whatever might have been the previous rights of the plaintiff to the money, those rights have ceased, and he is no longer entitled to reclaim it.

Such we understand to be the defence in this case. It was not, the money I received was never yours; but you offered to pay me this money as the money of Samuel Laighton, and in payment of his debt, and I received it as his money. When it passed into my hands, it was as

Laighton's money, whoever might have owned it previous= ly; and if I am accountable for it to any one, it is to him and not to you. This ground of defence impliedly admits that the money might have been the property of the plain- tiff, until he paid it to the defendant, but asserts that, hav- ing paid it as Laighton's, he cannot recover it as his own.

It seems to have been understood at the trial, on the part of the plaintiff, that the defendant asserted, that this money was never the property of the plaintiff, and the evidence of Laighton was apparently admitted on that ground; but we do not so understand the case. It was necessary for the de- fendant to contend that this money, *at the time of the pay- ment,* was to be regarded as the money of Laighton, but there was nothing in the case which required them to con- tend that it was not previously the money of Winkley; nor is there anything in the case which indicates to our minds that any such *point* was made. Indeed, the case expressly states that the testimony of Holmes, who says nothing as to the previous ownership of the money, was all the testi- mony introduced by the defendant, having any tendency to prove that the money was Laighton's. If the case presents this matter correctly, the testimony of Laighton had no tendency to disprove the matter of defence attempted to be shown by the defendant. He endeavored to show, by proof of the plaintiff's testimony on the former trial, that the money he paid was not his, but Laighton's, by which we understand that it was paid as Laighton's; while Laighton testified only that he did not furnish to the plaintiff the money that he paid to Foye. It proves nothing as to what the plaintiff testified, to show how the fact was, as to the ownership of the money before the time of the payment. The testimony of Laighton, then, was irrelevant to the mat- ter in controversy, and should have been rejected.

But it is said a verdict should not be set aside because immaterial evidence was received, and this evidence was in this view immaterial. Evidence which has no legitimate

bearing, may still have an unfavorable influence upon a claim or a defence. It may be calculated to excite prejudices, or raise false impressions; and in such cases its admission may furnish good ground to set aside a verdict. It is only in those cases where the testimony is immaterial in the broad sense of that term, of having no bearing, proper or improper, that the court can perceive, that they refuse to set a verdict on account of its illegal admission. That does not seem to us to be this case. The evidence had no just bearing in the case, but it was calculated to have an undue influence on the minds of the jury.

The evidence, which was rejected by the court, seems to have been inadmissible. If the money was offered to the defendant on Laighton's account, and was left with him as such, the plaintiff had no claim to recover it back, and it was wholly immaterial to him whether the money was applied to the discharge of the debt for which it was tendered or not. There might be good grounds for not making the application, as between Foye and Laighton; and if there was not, that was a matter into which Laighton had a right to inquire, and not the plaintiff.

*New trial granted.*