## SMITH *v.* SMITH.

In assumpsit for nursing and taking care of the defendant in sickness, it is material that the plaintiff and his wife took the principal care, that the plaintiff's wife was the principal nurse, and that this care and treatment was kind and considerate, and that the defendant was dangerously ill and in a critical situation.

The record or a copy of it is the best evidence of the fact, that a person has been bound over for his appearance at court to answer to charges of perjury. It is therefore incompetent to inquire concerning that fact of the witness.

Whether the fact itself, if properly proved, would be competent, *quære?*

It is only where the wrong-doer has sold the property unlawfully taken or detained and received the money for it, that the owner can waive the tort, and maintain assumpsit for money had and received to the use of such owner.

In ASSUMPSIT, for food, drink, washing, lodging and nursing of the defendant, for money paid, and for balance of account, the general issue was pleaded, with a set-off. Among other items of the set-off was a claim for a note of Abraham C. Smith, for $35, dated May 10, 1860, payable to the defendant or order, on demand, with interest, and sundry articles of bedding and other personal property.

Upon the trial, the plaintiff introduced the depositions of several witnesses who appeared to have been at the plaintiff's house, occasionally, while the defendant was sick there, in which depositions were the following interrogatories by the plaintiff:

In that of Susan Daniels—

(10) " When you were there (at the plaintiff's), who appeared to take the principal care of her (the defendant) in sickness; please state."

In Maria S. Daniels' deposition—

(16) "During the several times you were there (at the plaintiff's), who appeared to be the principal nurse engaged in taking care of her (the defendant)?"

(17) "Did she, or did she not, to the best of your knowledge, have kind care and treatment from Joseph and his wife during her several sicknesses?"

In the deposition of Dr. Tuttle, a practicing physician—

(4) " Did you consider her (the defendant) dangerously sick and in a critical condition?"

The foregoing questions were severally objected to at the trial by the defendant, but were admitted by the court, and the defendant excepted.

The last cross interrogatory in Harry P. Daniels' deposition was as follows: " Will you state whether or not you have been bound over to appear at the October term, 1861, of the Supreme Judicial Court for Rockingham county, to answer the charge of perjury?" To this interrogatory the plaintiff objected, and the court rejected it, and the defendant excepted.

The defendant introduced evidence tending to prove that when she left the plaintiff's house in June, 1860, she left in a drawer of the plaintiff's bureau in his house said note, and left in his house said articles of bedding and other personal property; that in

August, 1860, the defendant went to the plaintiff's house with said Abraham C. Smith, and in his presence demanded of the plaintiff said note and articles of bedding and personal property. The plaintiff looked into the drawer for said note, but not finding it there, inquired of his wife about it, who said that the defendant had given it to her as compensation for her services and trouble in taking care of her. The defendant denied this in the presence of said Abraham, and demanded said note; but the same was not given up to her, nor the other articles which she demanded.

October 3, 1860, said note was in the possession of Ira B. Hoitt, a practicing attorney, and said Hoitt wrote to said Abraham that said note was in his hands for collection, and said Abraham called on said Hoitt and refused to pay said note; and the plaintiff, on the 9th of October, 1860, commenced this action against the defendant, and summoned the said Abraham C. Smith as trustee, who made disclosure, and said note, which was never indorsed, was annexed to said disclosure. No question was made of the ability of the promisor to pay said note.

The court instructed the jury that the defendant could not avail herself of the value of said note in off-set in this action, but that if she would recover the value of the note, she could maintain a different action, as trover, for its value.

The jury returned a verdict for the plaintiff for $17.20, which the defendant moves to set aside, and for a new trial and in arrest of judgment, because of the foregoing exceptions and instructions.

And the questions arising in the case were reserved.

*Stickney*, for the plaintiff.

*Small*, for the defendant.

1. The direct interrogatories were irrelevant and incompetent.

2. It was the right of the plaintiff on cross-examination to propose the interrogatory to Daniels, and consequently to have the interrogatory read to the jury, however the law may be in regard to the right to compel an answer; 2 Phill. Ev. 496, 499; 11 E. C. L. 32, 34; *King* v. *Edwards*, 4 T. R. 44; 1 Greenl. Ev., secs. 455, 460; *Rex* v. *Watson*, E. C. L. 291; 1 Stark. Ev. (Perkins) 197, note M; 14 E. C. L. 285; 21 E. C. L. 465, and note; *The Queen's Case*, 6 E. C. L. 131; *Southard* v. *Rixford*, 6 Cow. 254; *The People* v. *Gay*, 3 Seld. (N. Y.) 378; *King* v. *Lewis*, 4 Esp. 25; *McBride* v. *McBride*, 4 Esp. 244. The case *Hersom* v. *Henderson*, 23 N. H. 498, is not a well considered case, and the authorities there cited do not sustain the decision.

3. The defendant was entitled to avail herself of the note in off-set. 2 Greenl. Ev., sec. 108; *Hill* v. *Davis*, 3 N. H. 384; *Cummings* v. *Noyes*, 10 Mass. 435; *Walker* v. *Davis*, 1 Gray 509. The husband is alone liable for the torts of the wife committed in his presence, and the possession of the wife is the possession of the husband. 2 Kent 149; Chit. Black. 414, 445, note 48; 2 Hill. on Torts 590; 2 Esp. N. P. 201. So if committed by them jointly during coverture. 1 Chit. Pl. 92.

SARGENT, J. The objection to the direct questions in the plaintiff's deposition, was not that they were leading, because it was too late to take that objection on trial, nor was it that the last one calls for an opinion of the witness, because the case shows that the witness was competent to give an opinion. But the objection is that they were all irrelevant. But we think they were properly allowed to be read and answered. One of the charges or counts in the declaration, is for nursing the defendant, and these questions seem to have reference to that count. Now it would be material on that point that the plaintiff's wife had the principal care of the defendant, and was her principal nurse. Her services in that case would be greater and more valuable than as though the defendant employed some other person in that capacity, and the plaintiff's wife had but little care of her. The value of such services would also depend much upon the manner in which they were rendered, whether the care and treatment were kind and considerate, or harsh and repulsive, and the amount of such care and of the services rendered, might be materially affected by the fact as to whether the defendant was very dangerously ill and in a critical condition, or whether she was only comfortably sick, as is sometimes said, and in no danger. The opinion of the physician that the defendant was or was not thus in danger, would be competent evidence that such was the fact, and that fact was competent.

The objection by the plaintiff to the cross interrogatory of the defendant, in regard to the witness having been bound over, &c., we think well taken. The plaintiff did not specify his objection to the question; and was not called upon to do so; the ruling must therefore be sustained if there was any sufficient ground upon which it could be based. The record of the binding over, or a copy of it, would have been the best evidence of the fact, if such fact existed. The answer to this question, if admitted, would not have been the best evidence, and was therefore incompetent. Whether the fact would be admissible, if the proper evidence of it had been offered, it is not necessary here to determine. Whether the decisions of *Clement* v. *Brooks,* 13 N. H. 92, and *Hersom* v. *Henderson,* 23 N. H. 498, are correct, or the views of the defendant as stated in his brief, we have here no occasion to decide.

Can the defendant be allowed her note in set-off in this action? In *Hill* v. *Davis,* 3 N. H. 384, it is held that where one took the goods of another and converted them to his own use, without the license of the owner, the tort might be waived and assumpsit be supported for the price. So in *Cummings* v. *Noyes,* 10 Mass. 435, where it is held that it is competent for the owner of goods, from whom they have been tortiously taken, to waive the tort, and to treat the party liable to his action as a purchaser, an agent or a bailee, whose use or disposal of the goods is thereby sanctioned and confirmed, and then the value of the goods, or a fair compensation for the use of them is recoverable, and to be assessed in damages. Some of the English decisions seem to favor the same view.

But in *Jones* v. *Hoar,* 5 Pick. 285, this question arose and was very fully considered, and the authorities, English and American,

were ably reviewed by *Strong*, J., of the common pleas, whose opinion is given in the note, and it is there held that the whole extent of the doctrine, as gathered from the books, is, that one whose goods have been taken from him, or detained unlawfully, whereby he has a right to an action of trespass or trover, may, if the wrong-doer sell the goods and receive the money, waive the tort, affirm the sale, and have an action for money had and received for the proceeds.   *Gilmore* v. *Wilbur*, 12 Pick. 124 ; *Allen* v. *Ford*, 19 Pick. 217.

So in this State, the court has had occasion to review this subject in *Mann* v. *Locke*, 11 N. H. 246, where it is held that the whole extent of the doctrine of waiving a tort and bringing assumpsit is, where the individual liable in trespass or trover has sold the goods unlawfully taken or detained, and received the money for them, when the owner may elect to affirm such sale, and maintain an action of money had and received for the proceeds; and see cases cited on page 248.   1 Chit. Pl. 39 and 40.    *White* v. *Brooks*, 43 N. . H. 402.   And we are not aware of any variation from that rule in this State since the decision in *Mann* v. *Locke*.

In Massachusetts we find this expression of Judge *Thomas* in *Walker* v. *Davis*, 1 Gray 509.   " Ordinarily, in the case of torts, it is in the election of the owner of the property wrongfully taken to bring his action for the tort, or waiving that, to bring assumpsit, and when he brings the latter, the defendant is estopped to say there was no promise, and that he took the property wrongfully or to set up his own fraud or wrong in defense of the suit."   But this is only a *dictum*, as the facts in that case do not call for any such holding.   There the wrong-doer had sold the property for cash, before action brought (as appears from page 508), and the plaintiff clearly had his election.   So in 2 Greenl. Ev., sec. 108, the same doctrine in substance is stated, and the cases favoring that view are cited as authority.   But in 1 Hilliard on Torts 47, ch. 1, sec. 38, we find this statement of Greenleaf, and the one just quoted from Judge *Thomas*, together with the decision by *Jackson*, J., in *Cummings* v. *Noyes*, 10 Mass., stated as containing doctrines in regard to this extended view of the remedy " which have been closely criticised and seriously doubted."   But we find a more recent case in that State, which if any farther authority were needed to show what the law is there held to be, would seem to be conclusive.   It is held in *Glass Co.* v. *Walcott*, 2 Allen 227, that "it is only when the wrong-doer has sold the property unlawfully taken or detained and received the money for it, that the owner can waive the tort and maintain an action of contract, and in that case, the action must be for money had and received to the use of such owner."

We hold, therefore, that the ruling of the court at the trial term was correct, as the plaintiff in this case had received nothing on the note—had neither sold or collected it ; and we think that to hold differently would be to abolish and obliterate all just and proper distinctions between the different forms of action.

*Judgment on the verdict.*