Spencer *v.* St. Clair.    { March 21, 1876.

### *Rescission of contract.*

A contract can only be rescinded by the acts or assent of all the parties.

A party claiming to have rescinded a contract, cannot excuse himself for not returning a promissory note, by showing that it is worthless by reason of its maker's insolvency.

Where a party had produced and surrendered to a referee at the trial certain notes, but had neglected seasonably to return other notes, and the objection was insisted upon, it was held that by leave of court he might resume the notes so surrendered.

From Grafton Circuit Court.

Assumpsit, to recover the sum of $300. The counts are general. Plea, the general issue. The plaintiff filed a specification in which he claimed to recover the following items of account :—

| | | | |
|---|---|---|---:|
| 1872. | Sept. 4, | To three saws...................... | $12.00 |
| | | lot of floor and other boards | 8.00 |
| | | " old iron............. | 5.00 |
| | | 3,000 feet of lumber........ | 30.00 |
| | | lot of wood............... | 9.00 |
| 1873. | Jan. 17, | To hire and use of before named, and other personal property, from September 9, 1872, up to the date of the plaintiff's writ....................... | 20.00 |
| | | To rent, use, and occupation of real estate, saw-mill, and fixtures, in Lyme, N. H., from September 9, 1872, to the date of the plaintiff's writ.. | 50.00 |
| | | | $134.00 |

At September term, 1874, of the circuit court, this case was by order of court referred to a referee, who, at the March term, 1875, made a report, finding in favor of the defendant, and at the request of the parties he reported the following facts proved, and his rulings upon questions of law, as follows : " On the 9th of September, 1872, the plaintiff, and his wife Mahala H. Spencer, executed their bond to the defendant in the penal sum of $1,100, conditioned to be void if the plaintiff and said Mahala should,—upon payment of $1,050, and interest, as follows, by said St. Clair, agreeably to his six promissory notes of even date herewith for that sum—one for $100.50, payable December 10, after date, one for $204, one for $208, one for $212, one for $216, one for $165, payable in one, two, three, four, and five years after date, respectively, to the order of Mahala H. Spencer, each with interest annually,—convey to said defendant certain tracts of land in Lyme, having thereon a house, barn, two saw-mills, and a shingle-mill. By the bargain, the defendant was to have, also, certain personal property not mentioned in the bond, including all the articles charged to the defendant by the plaintiff in his specification. The defendant's notes, mentioned in the bond, were delivered to the plaintiff on the day of their date, who has had possession of them ever since. Said Mahala endorsed them in blank about December 1, 1872. At the same time (September 9) said defendant delivered to the plaintiff four promissory notes of one George W. McConnell, dated May 7, 1872, amounting to $150 in all, payable to said defendant or order, but not endorsed by him as collateral security for the payment of the defendant's notes to said Mahala. These McConnell notes were at that time, and ever since have been, utterly worthless. Said bond and notes may be referred to as part of the report.

" The real estate mentioned in the bond, and the articles specified in items 1 and 3 of the plaintiff's specification, were the property of said Mahala. The articles mentioned in items 2, 4, and 5 of the specifications were the property of the plaintiff. The state of the titles to the property was not communicated to the defendant, and he had no knowledge on this subject.

" By the terms of the trade, the defendant was to have immediate possession of all the property, except the house and barn, of which he was to have possession on the first day of April then next. Shortly after the trade the defendant went into possession of the mills, and occupied the same until about the first of November following, when he determined not to perform his contract, or pay his notes, and abandoned the premises. While the defendant was in occupation of the premises he made certain repairs of and additions to the said mills and house, and in making said repairs and additions used three hundred feet of the boards mentioned in the 2d item of the specification, and two thousand feet of the lumber mentioned in the 4th item, and also used and applied two hundred feet more of said lumber and boards in payment of his board while engaged in making said repairs. Of all the rest of the personal property mentioned in the plaintiff's specification the

defendant made no use whatever, but left it upon the premises when he abandoned the same; and for that reason items 1, 3, and 5 are wholly disallowed by the referee.    Item 6 is also wholly disallowed.

"The defendant was permitted to testify, against the plaintiff's objection, as follows : ' The whole of the lower mill was, when he took possession, out of shape, and the bottom of the penstock was torn out. I put the wheel in place, and repaired the penstock, so that the mill run in good shape.    It wouldn't run at all when I went there.    I put two or three saws in order ; also cleaned out the pond, which was filled with sawdust, chips, &c.    I fixed the wheel of the upper mill, put in extra bearings, and built the addition, some 15 or 16 feet square,'—and the plaintiff excepted.    Upon this, and other evidence of a similar character, the referee finds that during his occupation the defendant made repairs of and additions to the said house and mills of the value (including the lumber of the plaintiff used by him in making the same) of thirty dollars, and that the said premises were thereby increased in value to that amount.    The referee finds that the value of the boards and lumber (items 2 and 4) used by the defendant making said repairs and additions was $23, and the value of the boards used and applied by him in paying for his board while making them was $2 ; that the use and occupation of the premises (item 7 of the plaintiff's specification) was reasonably worth and of the value of $15.    Shortly after the defendant's note fell due (December 13, 1872), the plaintiff called upon him for payment, when the defendant informed the plaintiff that he should not go on with the trade, and should not pay his notes.    The plaintiff did not then, nor at any time afterwards, tender or offer to the defendant either his own notes, or the aforesaid collateral notes of McConnell, nor did he ever, in any way, give the defendant to understand that he assented to the abandonment or rescission of the contract until the time of the filing of his specification in this suit, at or after the September term of said court, 1874.    At the hearing the plaintiff produced all of said notes, and delivered the same to the referee, stating that he claimed to recover nothing in this suit upon or on account of the same.    The defendant objected that upon these facts the plaintiff could not recover any of the items of his specification. The referee sustained the objection, and the plaintiff excepted.

" It appeared, and the referee finds, that the plaintiff always managed the property as if he were the owner, and that his wife never objected to his so doing : the referee ruled, nevertheless, that the plaintiff could not maintain his action, so far as regards the 1st, 3d, and 7th items of his specification, and the plaintiff excepted.

" There was no evidence of any express promise by defendant.    No objection was made to the form of the plaintiff's declaration.    If, in the opinion of the court, upon the foregoing facts, the plaintiff is entitled to recover, then the referee finds that the defendant did promise in manner and form as the plaintiff has thereof declared against him, and awards that the plaintiff recover against the defendant the amount of such of the foregoing items as may be allowed by the court, with interest thereon from the date of the writ."

At the March term, 1875, the plaintiff moved to amend his specification by inserting a claim to recover the amount of a note, of which the following is a copy:

$100.50.                                   LEBANON, N. H., Sept. 9, 1872.

December 10, after date, I promise to pay to the order of Mahala H. Spencer one hundred $\frac{50}{100}$ dollars, with interest annually, value received.                                             FRANK ST. CLAIR.

(Indorsed on the back)          MAHALA H. SPENCER.

The court allowed the amendment. The plaintiff then moved to recommit the report to the referee, which motion was granted, and the referee made the following addition to his report:

The referee, the report being recommitted to him, finds and reports "that the promissory note, mentioned in the plaintiff's motion to amend his specification, was due and owing to the plaintiff from the defendant at the date of the plaintiff's writ, and that there was no evidence before the referee tending to show that there was any defence to the same."

The plaintiff then moved for judgment on the report, and the court *pro forma* granted the motion; and the defendant excepted.

The questions of law arising on the foregoing case were transferred to the superior court for determination by STANLEY, J.

*Shirley*, for the plaintiff.

*Murray*, for the defendant.

CUSHING, C. J.    Here was a contract between the defendant on the one part, and the plaintiff and his wife Mahala on the other part. In point of fact, however, it was in substance a contract for the sale of her property to the defendant. It appears from the case that the real estate was the separate property of the wife, was to be conveyed by their deed, and that the husband had become a party, most probably under the idea that it was safer to have his security, as well as his wife's, on the bond;—but, whether considered as the contract of the wife, or the contract of the husband and wife, I think there could have been no right of action in the husband alone, excepting on the indorsed note.   Considered as a sale from Mahala to the defendant, it was she, and not the plaintiff, who put in the personal property with the bargain.   It is quite immaterial how she got her right from her husband to do so: *she* sold the real estate; *she*, or she and her husband, put in the personal property;—and, in case of a rescission of the contract, the right of action was in her, or in her and her husband, to recover the value of the articles furnished.

The case of *Winkley* v. *Foye*, 28 N. H. 513, is in point.   There, the plaintiff, Winkley, having assumed to pay money to the defendant, Foye, on behalf of one Leighton, it was held that the defendant, having received the money as the money of Leighton, the plaintiff could not recover the money as his own money.   So, here, the defendant,

having received this personal property either of the wife and as her personal property, or of the husband and wife as their personal property, could not be answerable for it to the husband alone. The contract was either with the wife, or with the husband and wife; and the defendant, if the contract were rescinded, would be answerable to the party or parties from whom he received the personal property, and with whom his contract was made.

The husband could not elect, as it seems to me, to rescind the contract, and he certainly did not by bringing the action in his own name; and the case finds that there was no rescission, at all events before the commencement of the action.

The contract could only be rescinded by the parties who made it, and therefore the husband himself could not rescind it. It was necessary, also, in order to rescind the contract, that the parties should be placed in the same condition as when it was made. It was necessary that, before the action was commenced, the consideration should be restored ;—and, even on the supposition that the rescission would avoid the defendant's notes so that it would be enough to surrender them at the trial, it was necessary, also, to restore the notes taken as collateral, and this, whether they were of any value or not. Then, the defendant had ex[ ended labor and money in repairs. Pars. on Con., part 2, ch. 3, sec. 3 ; *Cook* v. *Gilman,* 34 N. H. 556 ; *Evans* v. *Gale,* 21 N. H. 240.

In *Cook* v. *Gilman,* PERLEY, C. J., says,—" The case of *Evans* v. *Gale* is an authority to the point that when a party has possession of a promissory note, which he ought to return in order to maintain an action, he cannot excuse the neglect to return by proving to the jury that the note was worthless."

If the plaintiff had been the sole contracting party, and so the person who might rescind, still he had not done it, and, as it appears to me, could not do it.

If these views are correct, the only cause of action which the plaintiff in the outset had or could have, was the over-due indorsed note, and the action was properly brought to recover the amount due on that note.

We learn from the plaintiff's brief that the action was originally brought by other counsel, who was ill at the time of the trial; that he obtained such information as he could by the aid of the wife of the former counsel,—and this, I suppose, accounts for the comedy of errors which seems to have been played. The counsel for the defence objected that the plaintiff could not recover, because he had not surrendered the notes, and for other reasons. The referee appears to have sustained the objections. On what particular ground, or whether on all the grounds, does not appear. The counsel placed the notes in the hands of the referee, stating that he did not seek to recover upon them in the suit; and the matter went back from the referee to the court.

What was the effect of this ? It appears to me that it was partly matter of fact, as well as matter of law. If the plaintiff had had a

right at that time to effect a rescission, and by surrendering the notes had done so, I think he would have been bound by the act. But it appears that he had not a right to rescind, not only because, as I have suggested before, he was not the proper party, but also because the notes—at least, those held as collateral—ought to have been surrendered before the action was commenced. What the plaintiff did, therefore, could amount to nothing more than an offer to correct his supposed mistake by surrendering the notes at that time. But the defendant persisted in his objections, and the case does not show that he withdrew any of them. I think, therefore, that here was no election completed, but that the plaintiff might properly be permitted to withdraw his offer to surrender the notes.

The case does not show that any objection was made to the amendment, or the recommitment, or that any further hearing was desired than was had. The only question which appears to have been raised was as to the ruling of the court permitting the note to be resumed by the plaintiff, and made the foundation of a judgment. Under all the peculiar circumstances of this case, I think it was right that this should be done. It appears to have been the only mode of working out anything like justice between the parties, and I can see no objection in point of law.

LADD, J. I also think the amendment of the specification was allowable under our practice ; and upon the finding of the referee that the note was due and owing from the defendant to the plaintiff at the date of the writ, and that no defence was shown, I see no reason why the plaintiff is not entitled to judgment for the amount of the note.

SMITH. J. Under the circumstances of this case, as they appeared at the argument, I think the amendment was properly allowed. No exception was taken to the amendment, nor to the recommittal of the report. The referee has reported that the note described in the amendment is due from the defendant to the plaintiff, and that there was no evidence tending to show that there is any defence to the same. What is there to hinder the plaintiff having judgment upon the report for the amount due upon the note ?

The plaintiff cannot recover for the articles contained in the specification which belonged to his wife, nor for those which belonged to himself, because there is no evidence that the defendant converted them into money. *Smith* v. *Smith*, 43 N. H. 536 ; *Mann* v. *Locke*, 11 N. H. 246. I also agree with the views of my brother CUSHING, that the contract could only be rescinded by all the parties to it.

*Exceptions overruled.*